## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **SIIAVUSH UMAROV,**<br>　　　　　*Petitioner*,<br><br>　　　　v.<br><br>**MICHAEL ROSE,** *Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement*; **JAMAL L. JAMISON,** *Warden of Philadelphia Federal Detention Center*,<br>　　　　　*Respondents*. | **Civil No. 26-0486** |

### MEMORANDUM

**Costello, J.**                                         **February 17, 2026**

Siiavush Umarov ("Umarov") is a national of Tajikistan and a citizen of Russia who entered the United States in 2023. On January 22, 2026, Immigration and Customs Enforcement ("ICE") took Umarov into custody and detained him under 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act ("INA") which generally does not permit release on bond. While detained at the Federal Detention Center ("FDC") in Philadelphia, Pennsylvania, Umarov filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his mandatory detention without bond is unlawful.[1] The Government opposed the Petition. Because § 1225 does not apply to noncitizens, like Umarov, who have resided in the United States since entering the country, the Court will grant the Petition.

---

[1]      Umarov filed an Amended Petition that included additional information and corrected unintentional factual inaccuracies. ECF No. 3 at 1.

I.      FACTUAL BACKGROUND[2]

Umarov entered the United States in 2023.  ECF No. 3 ¶¶ 2, 17.  On May 23, 2023, he presented himself to the U.S. Customs and Border Protection agency at the Brownsville, Texas port of entry and expressed his intent to seek asylum.  *Id*. ¶ 2.  Immigration authorities interviewed Umarov and ultimately granted him humanitarian parole, allowing him to enter the United States while his asylum application was pending.  *Id.* ¶ 3.  Umarov obtained authorization to work in the United States and was issued a social security card.  *Id.* ¶ 4.  On January 22, 2026, ICE arrested Umarov while he was lawfully working.  *Id.* ¶ 5.

II.     LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This includes a noncitizen's challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

---

[2]     The Government does not dispute the facts in this case.  ECF No. 5 at 4.  The Court will therefore decide this matter on the briefs and without a hearing.

III.     **LEGAL BACKGROUND**

A.     **INA Detention Provisions**

At issue in this matter are two provisions of the INA that permit detention of noncitizens during immigration removal proceedings.  Section 1226 of the INA provides that the Attorney General may arrest and detain noncitizens subject to a few statutory exceptions.  8 U.S.C. § 1226(a).  A noncitizen may request a bond hearing before an immigration judge, who may release the noncitizen upon finding that he "poses no flight risk and no danger to the community."  *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); 8 C.F.R. § 1236.1(c)(8).  For decades, noncitizens like Umarov who entered the United States and resided in the country prior to their removal proceedings were detained under this section of the INA.

Prior to Umarov's arrest, the Department of Homeland Security ("DHS") changed course and began detaining noncitizens under § 1225 of the INA, which applies to "applicant[s] for admission" to the United States.  8 U.S.C. § 1225(b)(2)(A).  Historically, this provision applied only to individuals actively seeking to enter the country at a border or port of entry—not individuals already residing in the United States.  *Kashranov v. Jamison*, Case No. 25-5555, 2025 WL 3188399, at *6-7 (E.D. Pa. Nov. 14, 2025).  In July 2025, DHS issued a policy directing ICE agents to consider anyone who entered the United States without admission or inspection as an "applicant for admission" regardless of how long they have already been present in the country.  *Salinas Jaigua v. Jamison*, No. 25-7115, 2025 WL 3757076, at *2 (E.D. Pa. Dec. 29, 2025).

Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian

3

reasons or significant public benefit.'" *Kashranov*, 2025 WL 3188399, at *1 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

The Board of Immigration Appeals ("BIA") subsequently issued a decision endorsing DHS's new interpretation of § 1225 and ruling that all noncitizens who entered the United States without admission or inspection, including those who have been residing in the United States without lawful status, are subject to mandatory detention without bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

### B.    Umarov's Petition & the Government's Response

In January 2026, ICE detained Umarov under § 1225 pursuant to the application of this new policy.  Umarov argues that § 1225 does not apply to him because he had already been paroled into the United States.  ECF No. 3  ¶¶ 45-46.  Rather, his detention is governed by § 1226, which confers the right to a bond hearing.  *Id.*  He also argues that his mandatory detention without the right to a bond hearing violates his constitutional due process rights.[3]  *Id.* ¶¶ 38-40.  In part, Umarov asks the Court to declare his detention under § 1225 unlawful and order his immediate release.  *Id.* at 11; *ad damnum* clauses a-f.

The Government raises three arguments in opposition to the Petition.  First, that the Court lacks jurisdiction to intervene in Umarov's removal proceedings under three different jurisdiction-stripping provisions of the INA.  Second, that § 1225 of the INA applies to Umarov, not § 1226, and his mandatory detention is lawful under that provision.  Third, that Umarov's detention without a bond hearing does not offend due process.  As courts in this District and

---

[3]    Umarov's Petition asserts two violations of the Administrative Procedure Act and a violation of the *Accardi* Doctrine.  ECF No. 3 at 7-10.  Because the Court concludes that Umarov is entitled to relief under the INA and due process clause, it declines to reach these additional arguments.

across the country have repeatedly held in hundreds of recent cases, these arguments are unavailing.

## IV.      DISCUSSION

### A.      Jurisdiction

This Court has jurisdiction to grant writs of habeas corpus pursuant to 28 U.S.C. § 2241. The Government nevertheless argues that three of the INA's jurisdiction-stripping provisions bar this Court's review of Umarov's Petition:  8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a)(2)(B)(ii).  As is discussed in detail below, these statutes do not apply to the situation presented here and the Court has jurisdiction to rule on Umarov's Petition.

### 1.      Section 1252(g)

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."  8 U.S.C. § 1252(g).  This bar "does not sweep broadly."  *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020).  It reaches only the three specific actions it mentions—the commencement of proceedings, the adjudication of cases, and the execution of removal orders—"not *everything* that arises out of them."  *Id.* (emphasis added).  Umarov is not challenging any of the three actions referenced in this provision.  Instead, he is challenging the lawfulness of his mandatory detention under § 1225.  Section 1252(g) therefore does not apply here.  *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, 25-cv-5488, 2025 WL 3218243, at *2-3 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); *Kashranov*, 2025 WL 3188399, at *3-4 (Wolson, J.); *Cantu-Cortes v. O'Neill*, 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (Kenney, J.) (ruling that §

1252(g) does not strip the court of jurisdiction to decide habeas petitions under similar circumstances).

### 2.    Section 1252(b)(9)

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  The Government argues that this provision bars review of the Petition because Congress intended to insulate *all* threshold detention decisions from District Court review.  ECF No. 4 at 7-9.  This argument does not account for an important distinction between questions that arise from removal proceedings and claims that are collateral to, or independent of, the removal process.

In *Jennings v. Rodriguez*, the Supreme Court rejected an overly expansive interpretation of "arising from" that would encompass all actions related to the circumstances of detention.  *See* 538 U.S. at 293 ("cramming judicial review" of questions about circumstances and conditions of confinement "into the review of final removal orders would be absurd" and make too many claims unreviewable).  The Third Circuit, applying *Jennings*, has held that the phrase "arising from" explicitly "exclude[s] claims that are wholly independent of, or wholly collateral to, the removal process."  *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020); *see also Khalil v. President, United States of America*, 164 F.4th 259, 274 (3d Cir. 2026) (noting a distinction between claims challenging the government's authority to remove and detain noncitizens and claims "wholly collateral to" the removal process).

Umarov's claims are collateral to the removal process.  Umarov is not challenging the Government's authority to remove him.  Nor is he challenging the Government's broad authority to detain him.  Rather, he is questioning which statute governs his detention and, more specifically, whether he can be detained without any opportunity for a bond hearing.  "[B]ond hearings are 'separate and apart from'" deportation or removal proceedings.  *Kumar v. McShane*, 25-6238, 2025 WL 3722005, at *3 (E.D. Pa. Dec. 23, 2025) (quoting 8 C.F.R. § 1003.19(d)).  Thus, his claims do not "arise from" the removal process and § 1252(b)(9) does not apply.

### 3.    Section 1252(a)(2)(B)(ii)

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"  8 U.S.C. § 1252(a)(2)(B)(ii).  This statutory provision does not apply because Umarov is not challenging any discretionary government action.  He is challenging his mandatory detention under § 1225 without an opportunity for bond, which is a question of statutory interpretation.  *See Demore,* 538 U.S. at 516-17 (holding that challenge to statutory framework permitting detention without bail is not a discretionary judgment under this provision).  Section 1252 therefore does not bar the Court's review of the Petition.

### B.    Section 1225 Does Not Apply to Umarov

Turning to the merits, the disposition of this case depends on whether § 1225 or § 1226 applies to noncitizens like Umarov, who have resided in the United States for years.  The Court finds that § 1226 – and not § 1225 – applies here.

In resolving issues of statutory interpretation, the inquiry begins with the text, and "proceed[s] from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)). A "word must not be read in isolation but instead defined by reference to its statutory context." *U.S. v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014) (internal citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings. 8 U.S.C. § 1225(b)(2)(A). By its terms, this section applies to a noncitizen who is both "an applicant for admission" and "seeking admission."

An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)[.]" 8 U.S.C. § 1225(a)(1). The statute also defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

The INA does not define the phrase "an alien seeking admission." Courts in this District have construed this language to mean "*actively* trying to acquire or gain 'lawful entry . . . after inspection and authorization by an immigration officer.'" *Kashranov*, 2025 WL 3188399, at *6 (internal quotations omitted). The Court agrees with this interpretation of the statute for several reasons.

8

First, the plain text supports this reading. The present participle "seek*ing*" connotes "ongoing and continuous action." *Id.* "Seeking admission" therefore means taking ongoing, affirmative steps to enter the United States, typically at a border or port of entry by presenting oneself for inspection and authorization. *Id.* Second, the statutory context of § 1225(a) confirms it governs "inspections and detentions" of noncitizens at the border. *Id.* at *7. As Judge Wolson has explained in detail, various provisions of § 1225(b) refer to "inspection" of noncitizens and the treatment of noncitizens "arriving from contiguous territory." *Id.* (internal quotations omitted). These references confirm that mandatory detention under § 1225(a) applies to individuals detained "at or immediately following border crossing." *Id.*

Basic principles of statutory construction lend further support to this interpretation. Congress used two distinct terms when drafting the INA—"seeking admission" and "applicant for admission." If the Court were to accept the Government's position that these terms are interchangeable, one phrase would be rendered "entirely meaningless." *Id.* (citing *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (explaining cannon against surplusage)).

Umarov is not taking active steps to obtain entry into the United States. He entered the United States in 2023 and has lived here ever since. ECF No. 3 ¶ 6. Section 1225 therefore does not apply to him. Umarov's application for asylum does not alter this conclusion. "Instead of seeking a 'lawful entry to the United States,' an asylum applicant currently living in the country, like [Umarov], is seeking a lawful means to remain here." *Anirudh v. McShane*, 25-6458, 2025 WL 3527528, at *5 (E.D. Pa. Dec. 9, 2025).

The Government notes that a divided Fifth Circuit panel found the Government's interpretation of § 1225 to be correct. *Buenrostro-Mendez v. Bondi*, --- F.4th ---, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026). The majority reasoned that the terms "applicant

for admission" and "seeking admission" have the same meaning.  *Id*. at *4.  This opinion is not binding authority.  Moreover, for the reasons stated above, the Court does not find the reasoning of this opinion persuasive.

The Government makes the additional argument that Umarov is subject to mandatory detention based on the reasoning in *Matter of Q. Li*, 29 I. & N. Dec. 66, 67-69 (BIA 2025) (finding that § 1225 applies to "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings").  However, the Government acknowledges that this argument has not succeeded in this District.  *See e.g., Cordero v. Rose,* No. 26-534, ECF No. 5 (E.D. Pa. Jan. 29, 2026) (Marston, J.) (concluding that petitioner, who entered the United States more than three years before arrest, was not actively "seeking admission" within the meaning of § 1225(b)(2)); *Cajas-Duchimaza v. McShane,* No. 26-621, ECF No. 6 (E.D. Pa. Feb. 3, 2026) (McHugh, J.); *Gurievi v. Rose,* No. 26-736, ECF No. 6 (E.D. Pa. Feb. 9, 2026) (Kearney, J.). This Court similarly disagrees with the Government's argument.  Umarov has resided in the United States for years and is not actively seeking admission.  The fact that he presented himself to border authorities years ago and was granted humanitarian parole does not change the analysis.  Because Umarov was not actively seeking admission at the time of his recent arrest, he is not subject to mandatory detention under § 1225.

Umarov's detention is instead governed by § 1226 because he is a "[noncitizen] already present in the United States."  *Jennings*, 583 U.S. at 303.  Section 1226, titled "Apprehension and detention of aliens," provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]"  8 U.S.C. § 1226(a).  Except under very limited circumstances, noncitizens detained under this section are entitled to a bond

hearing and an opportunity for release pending the outcome of immigration proceedings. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Because § 1226 applies, Umarov's mandatory detention under § 1225 is unlawful.

### C.     Due Process

The Government next argues that Umarov's mandatory detention pending the resolution of his removal proceedings does not offend due process. ECF No. 5 at 16-17. The Court disagrees.

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (internal quotations omitted). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, which weighs (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Each *Matthews* factor weighs in favor of Umarov. First, he has a strong liberty interest in being free from mandatory detention. Second, Umarov's detention under § 1225 poses a high risk of erroneously depriving him of his rights because he has not been afforded the opportunity for a neutral decisionmaker to make an individualized determination about whether he poses a flight risk or a danger to the community. Third, a bond hearing poses a minimal administrative burden to the Government. That minimal burden is clearly outweighed by Umarov's strong liberty interest and right to be heard.

## V.      CONCLUSION

Section 1226 applies to Umarov's detention because he is not actively seeking admission and has been living in the United States since 2023.  Therefore, his continued detention under § 1225 is unlawful.  As a result, the Court will grant his Petition.

An appropriate Order follows.

BY THE COURT:

_____
MARY KAY COSTELLO, J.